<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THEODORE KRAMARZ**, <br><br> Plaintiff, <br><br> v. <br><br> **NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)**, <br><br> Defendant. | Civil Action No. 19-19951(ZNQ) (LHG) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

This matter comes before the Court upon a Motion for Summary Judgment (the "Motion," ECF No. 16) filed by Plaintiff Theodore Kramarz ("Kramarz"). Kramarz filed a Memorandum of Law in support of the Motion. ("Pl.'s Memorandum," ECF No. 16-1.) Defendant National Railroad Passenger Corporation (Amtrak) ("Amtrak") opposed the Motion. ("Opp'n Br.," ECF No. 19.) No reply was filed. The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART the Motion.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This suit arises from a workplace injury Kramarz suffered while employed by Amtrak. (Pl.'s Statement of Undisputed Material Facts ("PSUMF") ¶ 17, ECF No. 16-1.)[1] The accident occurred on July 9, 2019, when Kramarz fell down through an open hatchway in the roof of a railcar. (*Id.* ¶¶ 17–18.) The hatchway was equipped with a protective door that could be swung closed to cover the hatchway or could be swung open for access from the interior of the car up through its roof. The type of catenary maintenance (CAT) car Kramarz fell through was also designed with two moveable safety bars for its hatchway. When the door was opened, the safety bars could be used to connect the door in an upright position to a vertical railing that stands opposite the door. With the door, railing, and two safety bars guarding each of the four sides of the open hatchway, they collectively provided "four-way protection" (*Id.* ¶ 10.)

On the date of the accident, however, the four-way protection was not in place over the car's open hatchway. The safety bars were not deployed because they had been broken for several years. (*Id.* ¶¶ 6–8.) Without its safety bars to hold it upright, the hatchway door was swung in a completely open, flat position, lying on the car's roof. (*Id.* ¶ 2.) In that position, the door itself presented a potential tripping hazard. (*Id.* ¶14.) A fall through the hatchway and down to the floor of the CAT car was at least six feet. (*Id.* ¶ 16.)

On the date of the accident, Kramarz was part of a crew tasked with picking up "cantilever arms, which are pipes that hold the power lines in the air, for designated intervals on the mainline." (*Id.* ¶¶ 18–19.) Typically, a CAT car would travel and stop at "catenary poles where the arms had

---

[1] The factual background of this decision relies entirely upon Plaintiff's Statement of Undisputed Material Facts. Defendant's opposition brief states that it "does not take issue with most of these 'facts.'" (Opp'n Brief at 6.) The Court need not measure the scope of this inexact statement because Defendant did not file a responsive statement of materials facts as required under Local Civil Rule 56.1(a). By operation of the Rule, Defendant's failure to respond factually means that all of Plaintiff's facts as presented are "deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

been placed." (*Id.* ¶ 19.)  The workers would then exit the CAT car, retrieve an arm from the designated catenary poles, bring those back across the tracks, and hand them up to another employee on the CAT car's roof.  (*Id.*)

Workers, including the supervisor or gang foreman, became accustomed to working on cars with these "broken safety bars and open hatch," which were recognized as a "safety hazard." (*Id.* ¶ 21.)  Other supervisors were also aware of the broken safety bars and hatch door, but the safety bars were never fixed.  (*Id.*)  During entire work shifts the hatchway door was "kept in the open, flat position." (*Id.* ¶¶ 23–24.)

On the date of the accident, Kramarz was working on the roof of the CAT car helping to load catenary arms from the ground below when he "tripped on the hatchway door," "fell through the hole of the hatchway," and was injured.  (*Id.* ¶ 26.)

On November 7, 2019, Kramarz sued Amtrak in this Court.  (ECF No. 1.)  The Complaint is short.  It asserts a single negligence claim under the Federal Employers' Liability Act ("FELA"), the Federal Safety Appliance Act ("FSAA"), and the Federal Boiler Inspection Act ("FBIA").  (*Id.*) Amtrak answered and raised affirmative defenses.  (ECF No. 7.)  Among those defenses, Amtrak asserts that Kramarz was himself negligent, that his negligence contributorily or solely caused his injuries, and that he failed to mitigate his damages.  (*Id.* at 2.)

## II. LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248)).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250)). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (internal quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

### III.   DISCUSSION

Kramarz moves for summary judgment at two levels. First, he seeks a partial summary judgment that Amtrak violated Federal Railway Administration ("FRA") safety regulations and that he therefore cannot be contributorily negligent as a matter of law under the FELA. (Pl.'s Memorandum at 10). Second, he seeks a full summary judgment that Amtrak is liable for his injuries. (*Id*. at 15.)

Amtrak argues that summary judgment is inappropriate here because there are genuine issues of material fact as to the following: (1) whether Kramarz's injuries were caused by Amtrak's

4

failure to replace the barricade for the hatch door or caused by his own choice to work around the hole rather than close the hatch and (2) whether Kramarz is contributorily negligent by working with this uncovered hole. (Opp'n Br. at 9.) The Court addresses the two aspects of Kramarz's motion in turn.

      A.    **Whether Amtrak Violated FRA Regulations and Therefore Kramarz Cannot Be Found Contributorily Negligent for His Injuries**

Kramarz first contends that Amtrak violated three FRA safety regulations by "failing to make inspections and timely repairs to the safety bar latch and eliminate the tripping hazard created by the open, flat door."[2] (Pl.'s Memorandum at 8–9.) Specifically, Kramarz cites 49 C.F.R. §§ 214.519[3], 214.531[4], and 214.533[5]. In support of his position, Kramarz submits the deposition testimony of two Amtrak employees together with photographs of the door and hatchway from the accident, as well as an expert report.

For its part, Amtrak offers a minimal response to its purported violation of FRA regulations. The sole regulation it denies violating is the one directed to tripping hazards and it does so in a single sentence: "[t]he FRA regulation regarding tripping hazards does not apply

---

[2] The Court notes that Kramarz's brief actually argues that Amtrak violated four FRA regulations: §§ 214.519, 214.527, 214.531, and 214.533. The brief's reference to a violation of § 214.527, however, appears to be an inadvertent error. In his report, Kramarz's expert selectively quotes from that section to include § 214.527(c)(5), but he does not opine that it was violated, nor does he explain why he quoted it. (*See* Reilly Expert Report at pp. 9, 15–16, ECF No. 16-9.) On its face, § 214.527(c)(5) appears to be inapplicable insofar as it speaks to how quickly a missing operator seat must be repaired. Based on context, the Court infers that the section was quoted by the expert only because it is identified in § 214.531 as one the exceptions to the overall requirement under § 214.531 to repair maintenance cars within seven calendar days. Accordingly, for the purposes of this motion and consistent with his expert report, the Court construes Kramarz's position to be that Amtrak violated three FRA regulations: §§ 214.519, 214.531, and 214.533.

[3] Section 214.519 states that "[f]loors, decks, stairs and ladders of on-track roadway maintenance machines shall be of appropriate design and maintained to provide secure access and footing, and shall be free of oil, grease, or any obstruction which creates a slipping, falling, or fire hazard."

[4] In relevant part, § 214.531 states that a CAT car "that does not meet all the requirements of this subpart shall be brought into compliance as soon as practicable within seven calendar days. If repairs are not made within seven calendar days, the on-track roadway maintenance machine or hi-rail vehicle shall be placed out of on-track service."

[5] Given the length of § 214.533, the Court will not repeat it here. As suggested by its title, "Schedule of repairs subject to availability of parts," the section sets forth a further timetable for repairs and when unrepaired equipment must be removed from service.

because if Kramarz had simply shut the hatch door before the work had begun, the hazard would have disappeared." (Opp'n Brief at 9.)[6]

The "FELA governs recovery for work related injuries in the railroad industry." *Moncrease v. New Jersey Transit Rail Operations, Inc.*, 175 F. Supp. 3d 405, 408 (D.N.J. 2016). Its purpose is to protect railroad employees. *Id.* (quoting *Urie v. Thompson*, 337 U.S. 163, 191 (1949)). The FSAA does not itself provide a private cause of action for violations of its requirements, rather injuries caused by FSAA violations are recoverable by employees under FELA. *Romero v. CSX Transp., Inc.*, Civ. No. 06-1783, 2008 WL 5156677, at *3 (D.N.J. Dec. 9, 2008). Moreover, an FSAA violation establishes negligence per se in a FELA suit, resulting in the railroad being held strictly liable for any injury resulting from the violation. *Id.*; 45 U.S.C. § 53 (No injured employee "shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to [his] injury or death.") The Third Circuit has held that a violation of the FRA safety regulations also establishes negligence per se under FELA and leads to strict liability because the Administration's regulations also qualify as "safety statutes." *See Eckert v. Aliquippa & S. R. Co.*, 828 F.2d 183, 187 (3d. Cir. 1987).

The Court has reviewed the evidence submitted by Kramarz and is satisfied that he has met his initial burden as moving party to establish the absence of a genuine dispute of material fact with respect to Amtrak's FRA violations: the hatchway door in its condition was a tripping hazard and it had not been repaired in accordance with FRA regulations. The burden therefore shifts to Amtrak as non-moving party.

---

[6] Amtrak does not acknowledge or address the remaining FRA regulations pertaining to inspections and repairs beyond conceding that "[i]t is understood and agreed that a set of bars that could have held the door in a vertical position had been broken." (*Id.* at 6.) As set forth above, for the purposes of this Motion it is undisputed that "the safety bars/door props were broken . . . and had not been functioning for several years." (PSUMF ¶ 8.)

6

In response, Amtrak merely asserts that Kramarz should have closed the hatchway door while working on the roof. It buttresses its position with deposition testimony from one of its employees, (Opp'n Brief at 8) (quoting Manning testimony that "the cause was that they left the door open" and "they should have made sure the door was closed if that was how they were going to do it") and admissions by Kramarz himself at his deposition (Opp'n Brief at 6).

The Court finds this unavailing under either of two rationales. First, to the extent that Amtrak is attempting to argue that it did not breach its duty, but rather that Kramarz breached his duty, the Court notes that Amtrak's decision to permit its employees to use the unrepaired hatchway door at all (for example, to gain access themselves to the roof of the CAT car) constitutes a violation of 49 C.F.R. § 214.519 because the door in its open position necessarily posed a tripping hazard. This oversight, and the failure to address it, was a plain breach by Amtrak of its duty. The question as to whether that breach is what caused Kramarz's injury is, by definition, a separate causation inquiry that cannot defeat the portion of Kramarz's motion seeking an order that Amtrak violated FRA regulations and is therefore negligent per se.

Alternatively, the unrepaired four-way protection for the hatchway can be viewed as a "condition that [Amtrak] negligently created or permitted to exist," while Kramarz's failure to close the hatchway door prior to beginning his task on the roof was an "an act or omission . . . tending to add new dangers." This fits squarely within the Third Circuit's explicit definition of contributory negligence in FELA cases, *see Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1275 (1995), and assessing relative negligence, like causation, is a separate, later inquiry that cannot defeat the portion of Kramarz's motion seeking an order that Amtrak violated FRA regulations and is therefore negligent per se.

Accordingly, because Amtrak has not rebutted Kramarz's showing, the Court concludes that there is no genuine issue of material fact with respect to Amtrak's violation of FRA regulations

7

and that Kramarz is entitled to judgment as a matter of law on this issue. Under the FELA, Amtrak is therefore negligent per se. The Court will enter an Order to that effect.

The consequence of Amtrak's negligence per se under the FELA is that if causation is proven and liability is established, Kramarz cannot be found to be contributorily negligent. *Moncrease*, 175 F. Supp. 3d at 411. That is, should a finder of fact conclude that his injuries were caused at least in part by the unrepaired hatchway door defects, then Amtrak cannot apply a defense of contributory negligence to reduce any damages he is awarded.[7]  *Id*. The Court will therefore, as Kramarz requests, enter an order finding that he is not contributorily negligent.

B.    **Whether Amtrak is Ultimately Liable as a Matter of Law**

The Motion also seeks full summary judgment that Amtrak is liable as a matter of law for Kramarz's injuries. (Pl.'s Memorandum at 15.) As further proof of Amtrak's negligence, Plaintiff asserts that it violated a relevant OSHA safety regulation (29 C.F.R. § 1910.2(b)(3), regarding "Holes") and failed to comply with its own safety procedures (Amtrak Standard Operating Instruction 14, part 3.3.1.1, also regarding "Holes"), in addition to its aforementioned FRA regulation infractions. (*Id*. at 10–11). Kramarz cites the same factual and expert evidence in support of his position.

For its part, Amtrak maintains it complied with the OSHA regulation by providing a "cover" in the form of the hatchway door. (Opp'n Br. at 6–7.) With respect to Kramarz's remaining accusations, Amtrak reiterates its position that he should have closed the hatchway door. (*Id*. at 7–8.) It insists that "it will be for the jury to decide whether it was a failure of Amtrak to replace the [four-way fall protection] or whether the accident was the Plaintiff himself given his

---

[7] To articulate the standard in what is perhaps a clearer, affirmative form: should the finder of fact conclude that Kramarz was himself solely responsible for his own injuries, Amtrak can still avoid liability. *See Moncrease*, 175 F. Supp. 3d at 411.

experience, knowledge and awareness that there was an unprotected hole in the roof, and that this was a danger that he personally chose to 'work around' rather than covering the hole." (*Id.* at 9.)

In the Third Circuit, an employee bringing a cause of action under the FELA must establish that: (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant and assigned to perform duties which furthered such commerce; (3) his injuries were sustained while he was employed by the common carrier; and (4) that his injuries resulted from the defendant's negligence. *Felton v. Southeastern Pennsylvania Transp. Authority*, 952 F.2d 59, 62 (3d Cir. 1991); *Gomez v. H&M Transportation, Inc.*, Civ. No. 17-231, 2021 WL 236596, at *3 (D.N.J. Jan. 25, 2021). The parties in this case do not appear to be contesting the first three elements. With respect to the final element of negligence, even where, as here, a plaintiff establishes a safety-related regulatory violation and therefore "need not prove the traditional negligence elements of foreseeability, duty, and breach," he must still establish causation to prevail under the FELA. *Culkin v. New Jersey Transit Rail Operations, Inc.*, Civ. No. 16-1820, 2021 WL 5106465, at *2 (D.N.J. June 23, 2021) (citation omitted); s*ee also CSX Transp. Inc. v. McBride*, U.S. 685, 703–4 (2011) ("If negligence is proved . . . and is shown to have played a part, any part, even the slightest, in producing the injury, the carrier is answerable in damages even if the extent of the injury or the manner in which it occurred was not probable or foreseeable.") (quotation marks and emphases and citations omitted).

On the record before it, the Court agrees with Amtrak that a genuine issue of material fact remains pertaining to the causation of Kramarz's injuries.[8] A reasonable jury could find that, despite the condition of the hatchway's safety features, Kramarz's failure to close the hatchway door prior to engaging in the task of moving the cantilever arms up onto the roof was the sole cause

---

[8] Given that the Court concludes that there is a genuine issue of material fact with respect to causation that precludes full summary judgment, it does not reach the parties' dispute as to whether Amtrak violated the OSHA safety regulation or failed to comply with its own Standard Operating Instructions.

of his injuries. Should the jury reach this conclusion, Amtrak would not be liable even where the Court has found Amtrak negligent per se for violating FRA regulations. Nonetheless, this means that any evidence of Kramarz's own negligence will remain relevant for the purposes of trial concerning the issue of causation. *See Moncrease*, 175 F. Supp. 3d at 411; *Kennedy v. Norfolk S. Ry. Co.*, 553 F. Supp. 2d 516, 524 n.5 (W.D. Pa. 2008) (because disputed materials facts exist regarding whether plaintiff's injury resulted in whole or in part from any FSAA violation, evidence of plaintiff's contributory negligence as it related to the FSAA and FELA claims may be submitted to the jury with appropriate instructions); *Toth v. Grand Trunk Railroad*, 306 F.3d 335, 351 (6th Cir.2002) (finding proper a jury instruction to consider plaintiff's negligence as a possible alternative cause). Accordingly, the Court will deny the portion of the Motion seeking summary judgment as to Amtrak's liability.

## IV.   CONCLUSION

For the reasons stated above, Kramarz's Motion for Summary Judgment (ECF No. 16) will be GRANTED IN PART and DENIED IN PART. An appropriate Order will follow.

Date: **May 23, 2022**

                                        s/ Zahid N. Quraishi
                                        **ZAHID N. QURAISHI**
                                        **UNITED STATES DISTRICT JUDGE**